## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>              Plaintiff,<br><br>     vs.<br><br>VIZIO, INC.,<br><br>           Defendant. | Civil Action No. _____ |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiff Massachusetts Institute of Technology ("MIT"), by and through its undersigned attorneys, hereby pleads the following claims for patent infringement against Defendant Vizio, Inc. ("Defendant") and alleges as follows:

## PARTIES

1.      Plaintiff Massachusetts Institute of Technology is a co-educational, privately endowed university located at 77 Massachusetts Avenue, Cambridge, Massachusetts 02139. MIT is the assignee and owns all right, title, and interest to U.S. Patent Nos. 5,187,575 ("the '575 patent"), 5,218,435 ("the '435 patent"), 5,444,491 ("the '491 patent"), 5,485,210 ("the '210 patent") (collectively, the "Asserted Patents").

2.      MIT is a preeminent research university, dedicated to the advancement of knowledge and education of students in science, technology and other areas of scholarship. MIT has consistently received high marks from organizations such as *U.S. News & World Report*.  Its School of Engineering's graduate program, for example, has been consistently ranked No. 1 in the United States by *U.S. News & World Report*.  For more than twenty years, MIT has also consistently held top spot in the magazine's undergraduate engineering rankings.

3.      MIT is well-known for its cutting edge research and a longstanding commitment to bring creative solutions to the world's most pressing challenges.  MIT receives on average more than $1 billion in sponsored research, leading to hundreds of inventions every year.  MIT owns over 3,500 issued U.S. patents.  Each year, MIT's innovations contribute billions of dollars and hundreds of thousands of jobs to the economy.

4.      Among the inventions MIT has created are those related to digital televisions described in and claimed by the Asserted Patents, which are licensed by numerous manufacturers of television products.  These inventions and others resulted, in part, from MIT's pioneering research and development in digital television technology and related digital processing systems and methods, including its involvement in Digital HDTV Grand Alliance ("the Grand Alliance") and its contributions to the technologies that later became part of the ATSC Standards that now govern the digital terrestrial television broadcasts in the United States.

5.      MIT has been involved in digital television and related research since at least the 1980's.  In the early 1990's, the Federal Communications Commission ("FCC")  established Advisory Committee on Advanced Television Service ("the Advisory Committee") to assist it in gathering and understanding information on future technologies that would enable the United States to transition from analog television to a new digital television standard.  After evaluating scores of submissions for the new digital TV standards, the Advisory Committee chose four finalists for further evaluation.  MIT was one of the finalists.

6.      The finalists then formed the Grand Alliance in 1993 to expedite the development of standard advanced television technologies.  The collaboration resulted in a unified proposal that successfully combined the best features of the finalists' digital approaches to high definition television, resulting in a system that distinguished itself during laboratory and field tests.  The

Advanced Television Systems Committee ("ATSC") adopted and included in its proposed ATSC Standards specifications from the Grand Alliance's system.

7.      In November 1995, the Advisory Committee issued its final report, recommending the adoption of the ATSC Standards for digital terrestrial television broadcasts in the United States.  In December 1996, the FCC adopted the major elements of the ATSC Standards, and mandated its use for digital television broadcasting in the United States.  The adopted standards include fundamental technologies that had been developed by MIT in years prior.

8.      During the process of selecting new digital broadcasting standards, MIT not only made instrumental technical contributions, but also made significant impact on the evaluation process for those standards.  MIT's contributions to the new digital broadcasting standard earned it an R&D 100 Award in 1998 and an Emmy in 1997, together with its fellow members of the Grand Alliance.

9.      MIT has made significant investment to develop the new digital television and related signal processing technology.  As part of the research and development effort, MIT has accumulated a portfolio of valuable patents on technologies related to digital televisions and digital signal processing, including the Asserted Patents.  These patents have been made available for license and are indeed licensed by numerous licensees at fair and reasonable rates.

10.     To protect its intellectual property rights and the interest of its licensees, MIT has also offered Defendant a license.  Defendant has thus far refused to respect MIT's intellectual property rights, including the rights in the Asserted Patents.

11.     MIT is informed and believes, and thereon alleges, that Defendant is a corporation organized under the laws of the State of California, having a principal place of business at 39

Tesla, Irvine, CA 92618.  MIT is informed and believes, and thereon alleges, that Defendant directly or indirectly through affiliates, subsidiaries or other entities it owns and/or controls, makes, imports into the United States, distributes, sells, offers to sell and/or services throughout the United States, including in this judicial district, accused audiovisual products that practice at least one claim of the Asserted Patents sold under brand names such as Vizio that Defendant owns or licenses.  Hereinafter, the above-mentioned audiovisual products sold, imported, marketed, offered for sale, and/or serviced by Defendant are referred to as "Accused Products." Said Accused Products include, but are not limited to, (i) digital televisions ("DTVs") that comply with the ATSC, MPEG-2 and/or MPEG-4 standards and infringe at least one claim of the Asserted Patents, (ii) Blu-ray disc players that comply with the MPEG-2 and/or MPEG-4 standards and infringe at least one claim of the Asserted Patents, and (iii) home theater and audio systems that comply with the MPEG-2 and/or MPEG-4 standards and infringe at least one claim of the Asserted Patents.  Said Accused Products provided by Defendant are sold and/or offered for sale at retail stores in the District of Massachusetts such as Wal-Mart, Target and Sears, in online stores such as www.amazon.com, www.walmart.com, www.target.com, www.vizio.com, and thus are available for purchase and consumption in the District of Massachusetts.  Defendant has voluntarily and purposely placed these products into the stream of commerce with the expectation that they will be offered for sale and sold in the Commonwealth of Massachusetts and in this judicial district.

## JURISDICTION AND VENUE

12.     This is an action for patent infringement arising under the patent laws of the United States of America, Title 35 of the United States Code.  This Court has subject matter

4

jurisdiction over the matters pleaded herein under 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

13.     As detailed in paragraph 11 above, Defendant regularly and deliberately engaged in and continues to engage in activities that result in the sales, offers for sale, and/or services of infringing products and processes in the Commonwealth of Massachusetts and in this judicial district.  These activities violate the United States patent rights MIT has under the Asserted Patents.  This Court has personal jurisdiction over Defendant because, among other things, Defendant conducts business in the Commonwealth of Massachusetts and in this judicial district.

14.     Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §§ 1391(b), (c) and (d), and 1400(b).

## COUNT I
### (Infringement of U.S. Patent No. 5,187,575)

15.     MIT incorporates by reference paragraphs 1 through 14 of this Complaint as if set forth fully herein.

16.     The '575 patent, entitled "Source Adaptive Television System," was duly issued on February 16, 1993.  A true and correct copy of the '575 patent is attached as Exhibit A hereto.

17.     Until its recent expiration, the '575 patent had been in full force and effect since its issuance.  MIT owns by assignment the entire right, title, and interest in and to the '575 patent, including the right to sue for past infringements thereof.

18.     MIT is informed and believes, and thereon alleges, that at least the Accused Products provided by Defendant which can decode a signal compliant with the ATSC standards ("Accused ATSC Products") infringed one or more claims of the '575 patent.  These products include, but are not limited to, Vizio-brand DTVs, model numbers E322AR, E472VLE, E471VLE, E320VA-CA, E321ME, E422AR, E552VLE, E422VLE, E422VL, E3D470VX,

E3D420VX, E320ME, E421VA, E3D320VX, E321VA, E371VA, E370VA, E320VA,

VW26LHDTV20F, VOJ320F1A, VA26LHDTV10T, M370SL, M550SL, M320SL, M420SL,

E191VA, M420KD, M470SL, E240AR, M3D470KD, E221VA, M3D650SV, M3D550SR,

M3D460SR, E420VT, E220VA, E261VA, E320VT, M3D420SR, E190VA, E260VA, M420SV,

M470VT, XVT473SV, M370NV, M260VA-MX, E320VP, XVT553SV, M320NV, M470NV,

M190VA, E422VA, GV46LFHDTV20A, 20LFHDTV10A, GV42LFHDTV10A, GV42LHDTV,

GV46LHDTV, GV46LHDTV10A, GV47L, GV47LFHDTV10A, GV47LFHDT20A,

GV52LFHDTV10A, L30WGU, L32, L32HDTV10A, L37, L42HDTV10A, LC320WUG,

LC370WUE, LC420WUF, LC420WUF, LC470WUH, MT5382, P42HD, P42HDTV10A,

P50HDM, P50HDTV, P50HDTV10A, SV320XVT, XV370XVT, SV420M, SV4420XVT1A,

SV421XVT, SV422XVT, SV470XVT1A, SV472XVT, VA320A, VA320M, VA370M,

VF550M, VF550XVT1A, VF552XVT, VL320M, VL370M, VL420M, VL470M, VM60P,

VM60THDTV10A, VO370M, VO37LFHDTV10A,  VO400E, VO420E, VO42LFHDTV10A,

VO47LFHDTV10A, VO47LFHDTV20A, VOJ320F1A, VOJ370F1A, VP322HDTV10A,

VP422HDTV10A, VP423HDTV10A, VP42HDTV20A, VP503FHDTV10A,

VP504FHDTV10A, VP505XVT1A, VP50HDTV10A, VP50HDTV20A, VS420LF1A,

VT420M, VT470M, VU32LHDTV10A, VU32LHDTV10A, VU37LHDTV1A,

VU37LHDTV20A, VU37LHDTV30A, VU37LHDTV40A, VU42LFHDTV10A, VW32L,

VW32LHDTV10A, VW32LHDTV30A, VW32LHDTV40A, VW37LHDTV10A,

VW42LHDTV10A, VW42L, VW42LFHDTV10A, VW46LFHDTV10A, VW47LFHDTV10A,

VX20LHDTV, VX2LFHDTV10A, VX32L, VX32LHDTV, VX37, VX37LHDTV,

VX37LHDTV10A, VX37LHDTV20A, VX42L, VX52LFHDTV10A and M3D550KD.

19.     MIT is informed and believes, and thereon alleges, that Defendant was aware of MIT's pioneering patents (including the '575 patent) on fundamental signal processing technologies, which had been utilized, among other things, in audiovisual systems and devices similar to said Accused ATSC Products.  MIT further alleges that Defendant had actual notice of the '575 patent.

20.     MIT is informed and believes, and thereon alleges, that Defendant directly infringed one or more claims of the '575 patent, in violation of 35 U.S.C. § 271(a), by, among other things, making, using, offering to sell, selling, and/or importing into the United States, without authority or license from MIT, said Accused ATSC Products falling within the scope of one or more claims of the '575 patent.

21.     MIT is informed and believes, and thereon alleges, that Defendant induced the infringement of at least one claim of the '575 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly and/or recklessly aiding and abetting others (including Defendant's customers and end users) through activities such as marketing said Accused ATSC Products, creating and/or distributing data sheets, application notes, and/or similar materials with instructions on using said Accused ATSC Products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States, without license or authority, said Accused ATSC Products that fell within the scope of at least one claim of the '575 patent.

22.     On information and belief, Defendant contributed to the infringement of at least one claim of the '575 patent, in violation of 35 U.S.C. § 271(c), by, among other things, making, using, offering to sell, selling, and/or importing into the United States, without authority or license, said Accused ATSC Products which embodied a material part of the claimed inventions

of the '575 patent, knowing that such products and/or components were specially made or specially adapted for use in an infringement of these claims, and that they were not staple articles or commodities of commerce suitable for substantial non-infringing use.

23.     As a result of the infringement of the '575 patent by Defendant, MIT has been damaged by Defendant's conduct.  MIT is therefore entitled for such damages pursuant to 35 U.S.C. § 284 in an amount that presently cannot be ascertained, but that will be determined at trial.

24.     MIT is informed and believes, and thereon alleges, that Defendant's past infringement was deliberate and willful, and that this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees to MIT pursuant to 35 U.S.C. § 285.

## COUNT II
### (Infringement of U.S. Patent No. 5,218,435)

25.     MIT incorporates by reference paragraphs 1 through 14  of this Complaint as if set forth fully herein.

26.     The '435 patent, entitled "Digital Advanced Television Systems," was duly issued on June 8, 1993.  A true and correct copy of the '435 patent is attached as Exhibit B hereto.

27.     Until its recent expiration, the '435 patent had been in full force and effect since its issuance.  MIT owns by assignment the entire right, title, and interest in and to the '435 patent, including the right to sue for past infringements thereof.

28.     MIT is informed and believes, and thereon alleges, that at least Accused Products provided by Defendant that are capable of decoding signals compliant with ATSC, MPEG-2 and/or MPEG-4 standards ("Accused ATSC/MPEG Products") infringed one or more claims of the '435 patent.  These products include, but are not limited to, Vizio-brand televisions, model numbers E322AR, E472VLE, E471VLE, E320VA-CA, E321ME, E422AR, E552VLE,

E422VLE, E422VL, E3D470VX, E3D420VX, E320ME, E421VA, E3D320VX, E321VA,

E371VA, E370VA, E320VA, VW26LHDTV20F, VOJ320F1A, VA26LHDTV10T, M370SL,

M550SL, M320SL, M420SL, E191VA, M420KD, M470SL, E240AR, M3D470KD, E221VA,

M3D650SV, M3D550SR, M3D460SR, E420VT, E220VA, E261VA, E320VT, M3D420SR,

E190VA, E260VA, M420SV, M470VT, XVT473SV, M370NV, M260VA-MX, E320VP,

XVT553SV, M320NV, M470NV, M190VA, E422VA, GV46LFHDTV20A, 20LFHDTV10A,

GV42LFHDTV10A, GV42LHDTV, GV46LHDTV, GV46LHDTV10A, GV47L,

GV47LFHDTV10A, GV47LFHDT20A, GV52LFHDTV10A, L30WGU, L32, L32HDTV10A,

L37, L42HDTV10A, LC320WUG, LC370WUE, LC420WUF, LC420WUF, LC470WUH,

MT5382, P42HD, P42HDTV10A, P50HDM, P50HDTV, P50HDTV10A, SV320XVT,

XV370XVT, SV420M, SV4420XVT1A, SV421XVT, SV422XVT, SV470XVT1A,

SV472XVT, VA320A, VA320M, VA370M, VF550M, VF550XVT1A, VF552XVT, VL320M,

VL370M, VL420M, VL470M, VM60P, VM60THDTV10A, VO370M, VO37LFHDTV10A,

VO400E, VO420E, VO42LFHDTV10A, VO47LFHDTV10A, VO47LFHDTV20A,

VOJ320F1A, VOJ370F1A, VP322HDTV10A, VP422HDTV10A, VP423HDTV10A,

VP42HDTV20A, VP503FHDTV10A, VP504FHDTV10A, VP505XVT1A, VP50HDTV10A,

VP50HDTV20A, VS420LF1A, VT420M, VT470M, VU32LHDTV10A, VU32LHDTV10A,

VU37LHDTV1A, VU37LHDTV20A, VU37LHDTV30A, VU37LHDTV40A,

VU42LFHDTV10A, VW32L, VW32LHDTV10A, VW32LHDTV30A, VW32LHDTV40A,

VW37LHDTV10A, VW42LHDTV10A, VW42L, VW42LFHDTV10A, VW46LFHDTV10A,

VW47LFHDTV10A, VX20LHDTV, VX2LFHDTV10A, VX32L, VX32LHDTV, VX37,

VX37LHDTV, VX37LHDTV10A, VX37LHDTV20A, VX42L, VX52LFHDTV10A and

M3D550KD; and Blu-ray players, model numbers VBR140, VBR121, VBR133, VBR337, VBR338, and VBR210.

29.     MIT is informed and believes, and thereon alleges, that Defendant was aware of MIT's pioneering patents (including the '435 patent) on fundamental signal processing technologies, which had been utilized, among other things, in audiovisual systems and devices similar to said Accused ATSC/MPEG Products.  MIT further alleges that Defendant had actual notice of the '435 patent.

30.     MIT is informed and believes, and on thereon alleges, that Defendant directly infringed at least one claim of the '435 patent, in violation of 35 U.S.C. § 271(a), by, among other things, making, using, offering to sell, selling, and/or importing into the United States, without authority or license from MIT, said Accused ATSC/MPEG Products falling within the scope of at least one claim of the '435 patent.

31.     MIT is informed and believes, and thereon alleges, that Defendant induced the infringement of at least one claim of the '435 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly and/or recklessly aiding and abetting others (including Defendant's customers and end users) through activities such as marketing said Accused ATSC/MPEG Products, creating and/or distributing data sheets, application notes, and/or similar materials with instructions on using said Accused ATSC/MPEG Products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States, without license or authority, said Accused ATSC/MPEG Products that fell within the scope of at least one claim of the '435 patent.

32.     MIT is informed and believes, and thereon alleges, that Defendant contributed to the infringement of at least one claim of the '435 patent, in violation of 35 U.S.C. § 271(c), by,

among other things, making, using, offering to sell, selling, and/or importing into the United

States, without authority or license, said Accused ATSC/MPEG Products which embodied a

material part of the claimed inventions of the '435 patent, knowing that such products and/or

components were specially made or specially adapted for use in an infringement of these claims,

and that they were not staple articles or commodities of commerce suitable for substantial non-

infringing use.

33.     As a result of the infringement of the '435 Patent by Defendant, MIT has been

damaged by Defendant's conduct.  MIT is therefore entitled for such damages pursuant to 35

U.S.C. § 284 in an amount that presently cannot be ascertained, but that will be determined at

trial.

34.     MIT is informed and believes, and thereon alleges, that Defendant's past

infringement was deliberate and willful, and that this case is therefore an exceptional case, which

warrants an award of treble damages and attorneys' fees to MIT pursuant to 35 U.S.C. § 285.

## COUNT III
### (Infringement of U.S. Patent No. 5,444,491)

35.     MIT incorporates by reference paragraphs 1 through 14  of this Complaint as if

set forth fully herein.

36.     The '491 patent, entitled "Television System with Multiple Transmission

Formats," was duly issued on August 22, 1995.  A true and correct copy of the '867 patent is

attached as Exhibit C hereto.

37.     The '491 patent has been in full force and effect since its issuance.  MIT owns by

assignment the entire right, title, and interest in and to the '491 patent, including the right to sue

for past, present, and future infringements thereof.

38.     MIT is informed and believes, and thereon alleges, that at least Accused ATSC Products (as defined in paragraph 18) provided by Defendant, which are capable of receiving television signals or storing and reading television signals to and from a storage media, infringe one or more claims of the '491 patent.  MIT is further informed and believes, and thereon alleges, that Defendant is aware of MIT's pioneering patents (including the '491 patent) on fundamental signal processing technologies, which have been utilized, among other things, in audiovisual systems and devices similar to said Accused ATSC Products.  MIT further alleges that Defendant had actual notice of the '491 patent.

39.     MIT is informed and believes, and thereon alleges, that Defendant directly infringed and continues to directly infringe one or more claims of the '491 patent, in violation of 35 U.S.C. § 271(a), by, among other things, making, using, offering to sell, selling, and/or importing into the United States, without authority or license from MIT, said Accused ATSC Products falling within the scope of one or more claims of the '491 patent.

40.     MIT is informed and believes, and thereon alleges, that Defendant induced and continues to induce the infringement of one or more claims of the '491 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly and/or recklessly aiding and abetting others (including Defendant's customers and end users) through activities such as marketing said Accused ATSC Products, creating and/or distributing data sheets, application notes, and/or similar materials with instructions on using said Accused ATSC Products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States, without license or authority, said Accused ATSC Products falling within the scope of one or more claims of the '491 patent.

41.     MIT is informed and believes, and thereon alleges, that Defendant contributed to and continues to contribute to the infringement of one or more claims of the '491 patent, in violation of 35 U.S.C. § 271(c), by, among other things, making, using, offering to sell, selling, and/or importing into the United States, without authority or license, said Accused ATSC Products which embody a material part of the claimed inventions of the '491 patent, knowing that such products and/or components are specially made or specially adapted for use in an infringement of these claims, and that they are not staple articles or commodities of commerce suitable for substantial non-infringing use.

42.     As a result of the infringement of the '491 Patent by Defendant, MIT has been damaged, and will continue to be damaged by Defendant's conduct.  MIT is therefore entitled for such damages pursuant to 35 U.S.C. § 284 in an amount that presently cannot be ascertained, but that will be determined at trial.

43.     MIT is informed and believes, and thereon alleges, that Defendant's past and continuing infringement has been deliberate and willful, and that this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees to MIT pursuant to 35 U.S.C. § 285.

## COUNT IV
### (Infringement of U.S. Patent No. 5,485,210)

44.     MIT incorporates by reference paragraphs 1 through 14  of this Complaint as if set forth fully herein.

45.     The '210 patent, entitled "Digital Advanced Television Systems," was duly issued on January 16, 1996.  A true and correct copy of the '210 patent is attached as Exhibit D hereto.

46.     The '210 patent had been in full force and effect since its issuance, until its recent expiration.  MIT owns by assignment the entire right, title, and interest in and to the '210 patent, including the right to sue for past infringements thereof.

47.     MIT is informed and believes, and thereon alleges, that at least Accused ATSC/MPEG Products (as defined in paragraph 28) provided by Defendant infringed one or more claims of the '210 patent.  MIT is further informed and believes, and thereon alleges, that Defendant was aware of MIT's pioneering patents (including the '210 patent) on fundamental signal processing technologies, which had been utilized, among other things, in audiovisual systems and devices similar to said Accused ATSC/MPEG Products.  MIT further alleges that Defendant had actual notice of the '210 patent.

48.     MIT is informed and believes, and thereon alleges, that Defendant directly infringed at least one claim of the '210 patent, in violation of 35 U.S.C. § 271(a), by, among other things, making, using, offering to sell, selling, and/or importing into the United States, without authority or license from MIT, said Accused ATSC/MPEG Products falling within the scope of at least one claim of the '210 patent.

49.     MIT is informed and believes, and thereon alleges, that Defendant induced the infringement of at least one claim of the '210 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively, knowingly and/or recklessly aiding and abetting others (including Defendant's customers and end users) through activities such as marketing said Accused ATSC/MPEG Products, creating and/or distributing data sheets, application notes, and/or similar materials with instructions on using said Accused ATSC/MPEG Products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United

States, without license or authority, said Accused ATSC/MPEG Products that fell within the scope of at least one claim of the '210 patent.

50.     MIT is informed and believes, and thereon alleges, that Defendant contributed to the infringement of at least one claim of the '210 patent, in violation of 35 U.S.C. § 271(c), by, among other things, making, using, offering to sell, selling, and/or importing into the United States, without authority or license, said Accused ATSC/MPEG Products which embodied a material part of the claimed inventions of the '210 patent, knowing that such products and/or components were specially made or specially adapted for use in an infringement of these claims, and that they were not staple articles or commodities of commerce suitable for substantial non-infringing use.

51.     As a result of the infringement of the '210 Patent by Defendant, MIT has been damaged by Defendant's conduct.  MIT is therefore entitled for such damages pursuant to 35 U.S.C. § 284 in an amount that presently cannot be ascertained, but that will be determined at trial.

52.     MIT is informed and believes, and thereon alleges, that Defendant's past infringement was deliberate and willful, and that this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees to MIT pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, MIT prays for entry of judgment against each Defendant as follows:

A.     That Defendant has directly infringed each of the Asserted Patents under 35 U.S.C. § 271(a);

B.     That Defendant has induced the infringement by others of each of the Asserted Patents under 35 U.S.C. § 271(b);

C.      That Defendant has contributed to the infringement by others of each of the Asserted Patents under 35 U.S.C. § 271(c);

D.      That Defendant provide to MIT an accounting of all gains, profits and advantages derived by each Defendant's direct or indirect infringement of the Asserted Patents, and that MIT be awarded damages adequate to compensate them for the wrongful infringement by each Defendant, in accordance with 35 U.S.C. § 284;

E.      That the damages awarded to MIT with respect to each of the Asserted Patents be increased up to three times, in view of Defendant's willful infringement, in accordance with 35 U.S.C. § 284;

F.      That this case be declared an exceptional one in favor of MIT under 35 U.S.C. § 285, and that MIT be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action in accordance with 35 U.S.C. § 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

G.      That MIT be awarded its interest and costs of suit incurred in this action;

H.      That MIT be awarded any other supplemental damages and interest on all damages; and

I.      That MIT be awarded such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), MIT hereby demands a trial by jury on all issues triable to a jury.

**MASSACHUSETTS INSTITUTE
OF TECHNOLOGY**

By its attorneys,

 */s/ Thomas F. Maffei*
Thomas F. Maffei (BBO 313220)
Scott McConchie (BBO 634127)
GRIESINGER, TIGHE & MAFFEI, LLP
176 Federal Street
Boston, Massachusetts 02110
(617) 542-9900
tmaffei@gtmllp.com
smcconchie@gtmllp.com

Morgan Chu (CA 70446)
David I. Gindler (CA 117824)
Christopher A. Vanderlaan (CA 155628)
Laura E. Evans (CA 254547)
H. Annita Zhong (CA 266924)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Dated: May 18, 2012